# 13-1320-(L)

## 13-1323(CON), 13-1324(CON)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SAMSERV, INC., *et al.*,

Petitioners-Defendants,

SYKES, *et al.*, individually and on behalf of all others
similarly situated,

Respondents-Plaintiffs.

**ANSWER TO PETITION FOR LEAVE TO APPEAL
PURSUANT TO FED. R. CIV. P. 23(f) AND FED. R. APP. P. 5**

NEIGHBORHOOD ECONOMIC
DEVELOPMENT ADVOCACY PROJECT
176 Grand Street, Suite 3000
New York, New York 10013
(212) 680-5100

EMERY CELLI BRINCKERHOFF & ABADY LLP
75 Rockefeller Plaza, 20th Fl.
New York, New York 10019
(212) 763-5000

MFY LEGAL SERVICES, INC.
299 Broadway, 4th Floor
New York, New York 10013
(212) 417-3701
*Attorneys for Respondents-Plaintiffs*

## TABLE OF CONTENTS

PAGE NO(s):

TABLE OF AUTHORITIES .................................................................ii-v

PRELIMINARY STATEMENT ..........................................................1

RELEVANT FACTS ............................................................................2

ARGUMENT ......................................................................................4

    A.    Legal Standard ....................................................................4

    B.    Interlocutory Review Is Not Warranted Because Judge Chin's Class Certification Order Is Not Questionable and Does Not Effectively Terminate the Litigation ......................................................5

        1.    Judge Chin's Certification Order Does Not Effectively Terminate the Litigation ..............................................5

        2.    Judge Chin's Certification Decision Is Not Questionable ..........7

            a.    Defendants' Filing of Fraudulent Affidavits of Merit Caused a Common Injury to Every Member of the Class ....................................................................8

            b.    The Question of Service Does Not Defeat Commonality ...................................................11

            c.    Whether Debts Were Actually Owed is Irrelevant to this Litigation ..............................................13

            d.    The Predominance Requirement Is Satisfied ................15

            e.    Samserv Is a Proper Defendant .....................................20

    C.    Interlocutory Review Is Not Warranted Because Defendants' Purported "Novel Questions" Do Not Present a Compelling Need for Immediate Resolution ........................21

CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

PAGE NO(s):

## Cases

*Abby v. Paige*,
  10-23589-CIV, 2013 WL 141145 (S.D. Fla. Jan. 11, 2013) ...............................14

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................16

*Anza v. Ideal Steel Supply Corp*.,
  547 U.S. 451 (2006) ...........................................................................21

*Beaton v. Transit Facility Corp.*,
  14 A.D.3d 637, 789 N.Y.S.2d 314 (App. Div. 2d Dep't 2005) ...........................15

*Blair v. Equifax Check Servs., Inc.*,
  181 F.3d 832 (7th Cir. 1999) .......................................................... 5, 14

*Bridge v. Phoenix Bond & Indemnity Co.*,
  553 U.S. 639 (2008) ...........................................................................25

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ................................................................5

*City of New York v. Smokes-Spirits.Com, Inc.*,
  12 N.Y.3d 616 (2009) .........................................................................24

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ........................................................................16

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ...................................................................16

*Espinoza v. 953 Assocs. LLC*,
  280 F.R.D. 113 (S.D.N.Y. 2011) ...........................................................17

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (2002) .........................................................................24

*Hamid v. Stock & Grimes, LLP,*
 876 F. Supp. 2d 500 (E.D. Pa. 2012) .................................................................13

*Hartman v. Great Seneca Fin. Corp.,*
 569 F.3d 606 (6th Cir. 2009).............................................................................24

*Hemmingsen v. Messerli & Kramer, P.A.,*
 674 F.3d 814 (8th Cir. 2012).............................................................................24

*Hevesi v. Citigroup,*
 366 F.3d 70 (2d Cir. 2004) ...............................................................................22

*In re Bolte,*
 90 N.Y.S. 499 (1st Dep't 1904).......................................................................... 10

*In re Delta Air Lines,*
 310 F.3d 953 (6th Cir. 2002).............................................................................5

*In re Lorazepam & Clorazepate Antitrust Litig.,*
 289 F.3d 98 (D.C. Cir. 2002) ............................................................................5

*In re Visa Check/MasterMoney Antitrust Litig.,*
 280 F.3d 124 (2d Cir. 2001)............................................................................ 6, 17

*Krawczyk v. Centurion Capital Corp.,*
 06-C-6273, 2009 WL 395458 (N.D. Ill. Feb. 18, 2009)......................................14

*Matter of 367 E. 201st St. LLC v. Velez,*
 917 N.Y.S.2d 814 (Sup. Ct. 2011) ....................................................................9

*Midland Funding v. Giraldo,*
 No. CV-021859-12, 2013 N.Y. Misc. LEXIS 1083
 (Dist. Ct. Nassau County Mar. 22, 2013) ..........................................................24

*Moore v. PaineWebber, Inc.,*
 306 F.3d 1247 (2d Cir. 2002)............................................................................ 9, 16

*Myers v. Hertz Corp.,*
 624 F.3d 537 (2d Cir. 2010)...............................................................................16

*Newman v. RCN Telecom Servs., Inc.,*
 238 F.R.D. 57 (S.D.N.Y. 2006) .........................................................................10

*O'Rourke v. Palisades Acquisition XVI, LLC*,
  635 F.3d 938 (7th Cir. 2011) ..................................................................24

*Sedima, S. P. R. L. v. Imrex Co.*,
  473 U.S. 479 (1985) ...............................................................................21

*Seijas v. Republic of Argentina*,
  606 F.3d 53 (2d Cir. 2010) .....................................................................17

*Stutman v. Chemical Bank*,
  95 N.Y.2d 24 (2000) ..................................................................... 5, 7, 24

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse*, *Ltd.*, 262 F.3d 134, 139 (2d Cir.
  2001)................................................................................................ *passim*

*Trinidad v. Breakaway Courier Sys.*,
  No. 05 Civ. 4116 RWS, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007)..................17

*Vengurlekar v. Silverline Technologies, Ltd.*,
  220 F.R.D. 222 (S.D.N.Y. 2003) ............................................................11

*Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*,
  453 F.3d 179 (3d Cir. 2006)....................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ..............................................................................9

*Weinberg v. Hertz Corporation*,
  69 N.Y.2d 979 (1987) ..............................................................................24

*Woodson v. Mendon Leasing Corp.*,
  100 N.Y.2d 62, 790 N.E.2d 1156 (2003)..................................................9

*Zelnik v. Bidermann Industries U.S.A.*,
  662 N.Y.S.2d 19 (1st Dep't 1997) ............................................................9

**Other Authorities**

15 U.S.C. § 1692 *et seq*..............................................................................1

18 U.S.C. §§ 1961-1968 ...............................................................................1

22 N.Y.C.R.R. § 81.1(b)(1) ..........................................................................9

CPLR 3215(f)............................................................................................15

Federal Jury Practice And Instructions, Civil, § 105.04..........................................12

N.Y. CPLR 3215(f).....................................................................................9

N.Y. Const. VI, § 28 ..................................................................................9

N.Y. GBL § 349..........................................................................................2, 3

Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez, and Clifton Armoogam ("Named Plaintiffs"), on behalf of themselves and the plaintiff classes they represent, respectfully submit this consolidated Answer to Defendants' three Petitions for Permission to Appeal, pursuant to Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5 ("Petition"), from the March 28, 2013 Order and September 4, 2012 Opinion of the United States District Court for the Southern District of New York (Chin, J.), certifying two classes of individuals who were sued by the Mel Harris Defendants as counsel for the Leucadia Defendants in New York City Civil Court and had default judgments entered against them ("Plaintiffs" or "Plaintiff Classes").

## PRELIMINARY STATEMENT

Defendants' Petition should be denied.  In certifying the (b)(2) and (b)(3) Plaintiff Classes, Judge Chin strictly adhered to Second Circuit and Supreme Court precedents.  The members of the Plaintiff Classes are all (current or future) victims of Defendants' scheme to extract money through illegal means in violation of federal and state law.  As Judge Chin correctly found, Plaintiffs' overarching common claim – that Defendants, working in concert, are engaged in an enterprise designed to illegally appropriate Plaintiffs' property in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), New York General Business Law ("N.Y. GBL") § 349, and New York Judiciary Law

("N.Y. JL") § 487 – should be adjudicated on a class-wide basis.  Defendants' high

volume practice of securing default judgments based on fraudulent affidavits is

accomplished through computerized systems following uniform processes.  The

electronic records document Defendants' uniform pattern and practice of creating

hundreds of thousands of materially identical, fraudulent affidavits of merit and

affidavits of service, which are in turn used to obtain default judgments.  Whether

Defendants' use of these affidavits provides the basis for a claim under each of the

four statutes is *the* central and common issue identical to each and every class

member.  And that common core gives rise to a raft of ancillary questions that are

also common, thus establishing that common issues predominate.

## RELEVANT FACTS

Plaintiffs assert three claims against all Defendants and one additional

claim against the Mel Harris Defendants, pursuant to the FDCPA, RICO, N.Y. GBL

§ 349, and N.Y. JL § 487, respectively.  Plaintiffs are all victims (or future targets)

of the same scheme.  The names of all Plaintiffs appear on spreadsheets – purchased

by the Mel Harris and Leucadia Defendants – that purport to list debtors and the

debts they owe.  On the basis of those spreadsheets and nothing more, all Plaintiffs

have been (or will be) sued by the Mel Harris Defendants for their purported debts.

In all such suits, Defendants submitted materially identical and materially false

affidavits, including affidavits of merit in which Defendant Fabacher falsely claimed

to have personal knowledge of the underlying credit agreements, the billing statements allegedly sent and received, and ultimately, that Plaintiffs owed a specific purported debt.  And, in all suits, default judgment was awarded in Defendants' favor as a direct result of their false representations.  The core of Plaintiffs' case has always been Defendants' systematic submission of fraudulent affidavits of merit to courts in order to secure default judgments they could never obtain through an honest court submission.

On September 4, 2012, Judge Chin issued a 42-page Opinion ("Opinion" or "Op.") certifying a "Rule 23(b)(2) injunctive and declaratory relief class – comprised of all persons who have been or will be sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Court and where a default judgment has been or will be sought – to resolve the equitable portion of plaintiffs' RICO, GBL and Judiciary Law claims;" and a "Rule 23(b)(3) liability class – comprised of all person[s] who have been sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Court and where a default judgment has been entered against them – to resolve the issues of whether defendants' actions violated the FDCPA, RICO, New York GBL § 349, and New York Judiciary Law § 487." Op. at 39-40.  The Opinion also directed plaintiffs to "submit a proposed order on notice."  *Id.* at 40.  Plaintiffs submitted their proposed order on February 7, 2013.

3

Defendants objected.  Judge Chin denied those objections and entered the class

certification order on March 28, 2013.

## ARGUMENT

### A. Legal Standard

In the absence of "special circumstances," petitioners seeking leave to

appeal pursuant to Fed. R. Civ. P. 23(f) must demonstrate either (1) that the

certification decision will effectively terminate litigation and there has been a

substantial showing that the district court's decision is questionable, or (2) that the

certification order implicates a legal question about which there is a compelling

need for immediate resolution.  *Sumitomo Copper Litig. v. Credit Lyonnais Rouse,*

*Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).  This standard is so exacting that it "will

rarely be met."  *Id.* at 140.

Defendants ignore this standard.  The Leucadia and Samserv

Defendants fail to make any argument that Judge Chin's Opinion will terminate

litigation (and the Mel Harris Defendants do so only with unsupported conclusory

allegations).  Defendants also cannot make a substantial showing that Judge Chin's

decision was questionable because it is firmly grounded on well-settled precedent.

Similarly, Defendants do not identify any legal questions about which there is a

"compelling need for immediate resolution."

**B. Interlocutory Review Is Not Warranted Because Judge Chin's Class Certification Order Is Not Questionable and Does Not Effectively Terminate the Litigation**

**1. Judge Chin's Certification Order Does Not Effectively Terminate the Litigation**

In order to demonstrate that a "certification order will effectively terminate the litigation," a petitioner typically must establish that a grant of class certification would force him to settle regardless of the merits of the case. *Sumitomo*, 262 F.3d at 138-39; *see also Blair v. Equifax Check Servs., Inc*., 181 F.3d 832, 834-35 (7th Cir. 1999). A petitioner must make an evidentiary showing on this point; conclusory statements by counsel will not suffice. *See, e.g.*, *Chamberlan v. Ford Motor Co*., 402 F.3d 952, 960 (9th Cir. 2005) (denying 23(f) petition because Ford "has made no showing that it lacks the resources to defend this case to a conclusion and appeal if necessary" and because its claims "are conclusory and are not backed up by declarations, documents, or other evidence demonstrating potential liability or financial condition"); *In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002) (explaining that "discussion of this factor must go beyond a general assertion" and that petitioner "should provide the court insight into potential expenses and liabilities"); *In re Lorazepam & Clorazepate Antitrust Litig*., 289 F.3d 98, 108 (D.C. Cir. 2002) (denying 23(f) petition because "[o]ther than mere assertions, [petitioner] makes no showing that it will be unduly pressured to settle because of the class's certification" and "failed to submit any evidence" in support of its petition).

Defendants fail this test.  Neither the Samserv nor Leucadia Defendants even mention this factor in their briefs.  And Leucadia took the opposite position in its most recent SEC filing, stating that "[i]f the Second Circuit rejects this appeal, the Company will continue to defend the case vigorously on the merits."  Form 10-K, Leucadia National Corp., at 28 (Feb. 25, 2013), *available at* http://yahoo.brand.edgar-online.com/DisplayFiling.aspx?dcn=0000096223-13-000013.  The Mel Harris Defendants' argument consists entirely of conclusory statements: that certification "threatens the very survival of Mel Harris and creates a "death knell scenario" because the class consists of "tens of thousands of persons." Mel S. Harris Defendants' Petition ("MSH Br.") at 19-20.  But this naked assertion is devoid of any evidentiary showing to support it, and the size of the class is not the proper locus of this Court's inquiry.  *Cf. In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 145-46 (2d Cir. 2001) (Sotomayor, J.) (superseded on other grounds) ("The effect of certification on parties' leverage in settlement negotiations is a fact of life for class action litigants.  While the sheer size of the class in this case may enhance this effect, this alone cannot defeat an otherwise proper certification.").

Moreover, after Judge Chin granted class certification, the Leucadia and Mel Harris Defendants have devoted substantial additional resources into this case by retaining additional counsel.  The Leucadia Defendants have added

Proskauer Rose LLP and Gibson Dunn & Crutcher LLP to their original counsel.

The Mel Harris Defendants have added Quinn Emanuel Urquhart & Sullivan LLP

and Bancroft PLLC to their original counsel. Rather than establish that "the

certification order will effectively terminate the litigation," Defendants have

demonstrated their financial ability and readiness to expend their significant

resources continuing to defend this action.

## 2. Judge Chin's Certification Decision Is Not Questionable

Defendants fail to make a "substantial showing" that the district court's

decision is "questionable." *Sumitomo,* 262 F. 3d at 139.[1] This Court's

"determination of whether the district court's decision is sufficiently questionable to

warrant interlocutory review [is] tempered by [its] longstanding view that the

district court is often in the best position to assess the propriety of the class and has

the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create

subclasses, and decertify the class whenever warranted." *Id.*

Rather than attempting to show that Judge Chin's order is questionable,

Defendants instead complain about a number of determinations that properly fall

within the sound discretion of the district court. Defendants claim that Judge Chin

was wrong when he determined that allegedly individualized questions of whether

---

[1]    The Samserv Defendants have abandoned the *Sumitomo* standard entirely, instead arguing that this Court should grant review because the district court's decision was "manifest error." Samserv Br. at 6. Manifest error, however, is not the standard in this Circuit. In any event, Samserv's arguments fail because Judge Chin's decision was correct.

service occurred and whether debts were actually owed do not defeat commonality, typicality, and predominance, MSH Br. at 7; Leucadia Defendants' Petition ("LUK Br.") at 4; Samserv Defendants' Petition ("Samserv Br.") at 6, and that Samserv is a proper Defendant, Samserv Br. at 17. These issues were correctly decided by Judge Chin, and certainly would not compel "inevitable reversal" of his decision.

### a. Defendants' Filing of Fraudulent Affidavits of Merit Caused a Common Injury to Every Member of the Class

Defendants argue that Plaintiffs assert disparate theories of injury based on whether service occurred and whether the underlying debts are valid. MSH Br. at 8-11; LUK Br. at 11-12. Defendants are wrong and their argument falls far short of making a substantial showing that the district court's decision is questionable. Judge Chin correctly found that Defendants, in every case, submitted identical affidavits of merit in order to procure default judgments. These affidavits were fraudulent because the affiant, Defendant Todd Fabacher, falsely claimed that he had personal knowledge of the matters set forth in the affidavit, when in fact he did not. Op. at 11 ("Fabacher signs hundreds of affidavits a week, purportedly based on personal knowledge, purporting to certify that the action has merit, without actually having reviewed any credit agreements, promissory notes, or underlying documents, and, indeed, without even reading what he was signing."). Every class member was injured by Defendants' use of this fraudulent affidavit, which was necessary to

obtain a default judgment.[2]  Judge Chin concluded that this "unifying thread"

satisfies commonality, warranting certification.  *Id.* at 25.  Class certification of

fraud claims is appropriate when the misrepresentations are "materially uniform,

[thereby] allowing such misrepresentations to be demonstrated using generalized

rather than individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247,

1249 (2d Cir. 2002); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

(2011) (holding that, to satisfy commonality, "claims must depend upon a common

contention . . . that it is capable of classwide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke").  Here, as Judge Chin concluded, the

---

[2]      Defendants claim that Fabacher's affidavit would have been sufficient to support the entry of default judgments had it been based "on information and belief."  Defendants are incorrect.  To support entry of a default judgment, New York law requires an affidavit from a party who has personal knowledge of the facts of the case.  N.Y. CPLR 3215(f); *Woodson v. Mendon Leasing Corp.*, 100 N.Y.2d 62, 70-71, 790 N.E.2d 1156, 1162 (2003); *Zelnik v. Bidermann Industries U.S.A.*, 662 N.Y.S.2d 19, 19 (1st Dep't 1997) ("Plaintiff's affidavit of merit on this claim is deficient because it is wholly on information and belief, without the slightest reference to the source of the information or the grounds for the belief.").  "No judgment, even in a small claims action, can rest entirely on hearsay evidence."  *Bidermann,* 662 N.Y.S.2d at 19.

     Defendants' reliance on a New York City Civil Court directive to buttress their claim is misplaced.  See LUK Br. at 14; MSH Br. at 12, 17.  First, the directive itself states that the affidavits required therein must be submitted in "addition to," not instead of, the affidavits on personal knowledge required by the CPLR and binding case law.  *See* N.Y.C. Civil Ct. Directive DRP-182 (May 2009).  Further, these directives are not approved by the legislature or the courts, but rather are issued by the administrative judge in her capacity as administrator and supervisor of the day-to-day operations of the civil court.  *See* NY Const. VI, § 28; 22 N.Y.C.R.R. § 81.1(b)(1), (4), (6) and (8); *Matter of 367 E. 201st St. LLC v. Velez*, 917 N.Y.S.2d 814 (Sup. Ct. 2011).  To the extent that the directive conflicts with the CPLR and case law it is unlawful and must be disregarded.

fraudulent affidavits of merit tie every class member together, regardless of whether

they received notice or owe a debt or entered into a settlement agreement.[3]

The cases cited by Leucadia for the proposition that individual

variations in this case defeat certification are inapposite.  LUK Br. at 15.  For

example, in *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y.

2006), the court held that the named plaintiff's claim was atypical because the

defendant's conduct towards him was of an entirely different nature than the

allegedly harmful conduct committed against the class members.  There, the

proposed class was comprised of "people who were harmed by [the defendant]

because they were induced to subscribe to [the defendant's] Internet service based

on allegedly false and/or misleading representations as to the speed of said service."

*Id*. at 64.  In contrast, the named plaintiff admitted that he switched to the

---

[3]      In fact, the class members (hypothesized by Defendants for the first time in their Petitions) who "voluntarily" entered into settlements after the Defendants fraudulently procured default judgments against them illustrate the commonality of the injury.  These alleged class members were victimized by the same fraudulent scheme, and thereby suffered the same injury – entry of a fraudulently procured default judgment – as every other class member.  A settlement is not "voluntary" when it is achieved only by fraudulently obtaining a legal advantage over the other party, such as a judgment, which can be used to damage credit, restrain bank accounts, and garnish wages.  In such a case, the resultant settlement is necessarily coerced.  *See Chevron Corp. v. Donziger*, 800 F. Supp. 2d 484, 487 (S.D.N.Y. 2011) (noting that enforcement actions may be instituted, not merely to enforce a judgment, but "to seek enhanced leverage . . . in an attempt to coerce a settlement); *In re Bolte*, 90 N.Y.S. 499, 516 (1st Dep't 1904) (noting the "not improbable" claim that "an infamous practice exists . . . to bring actions . . . and obtain judgments by default without personal service of the summons, and then issue body executions, and thus coerce settlement, even though the defendant may have had a defense); *Pierce v. Mayer*, 13 N.Y.S. 343, 344 (1st Dep't 1891) (observing that judgments can be used to coerce settlement).  Indeed, Defendants' scheme relied on the coercive force of a default judgment: they engage in minimal pre-suit contacts with the alleged debtors because they know that the best way to obtain a payment is not voluntarily, but by using a judgment as leverage.

defendant's Internet service because he "felt [he] could save money." *Id.*
(modification in original). That is, he was not even a class member. Here, the
Defendants' harmful conduct was the same for each class member—filing of false
affidavits of merit—and caused the same immediate result for each—procurement
of default judgments.

Likewise, certification was denied in *Vengurlekar v. Silverline
Technologies, Ltd.,* 220 F.R.D. 222, 231 (S.D.N.Y. 2003), because New Jersey wage
law did not apply to the claims of the class members who resided out of state, and in
*Lewis Tree Serv., Inc. v. Lucent Technologies Inc.*, 211 F.R.D. 228, 235 (S.D.N.Y.
2002), because the misrepresentations underlying the fraud claims varied based on
the specific interactions that certain class members had had with the defendants. In
both cases, there was no common basis for liability that applied to every class
member. Here, however, "plaintiffs' injuries derive from defendants' alleged
unitary course of conduct." Op. at 25 (internal quotation omitted).[4]

### b. The Question of Service Does Not Defeat Commonality

Likewise, Judge Chin's exercise of discretion in determining that
potentially individualized issues relating to service do not defeat commonality is not
"questionable." After reviewing extensive factual data relating to the false affidavits
of service, the district court determined that there was "substantial support for

---

[4]    For the reasons outlined in this section, the district court's finding of typicality is similarly
correct.

plaintiffs' assertions that defendants regularly engaged in sewer service." Op. at 7. Indeed, the substantial evidence of Defendants' widespread use of fraudulent affidavits of service permits a fact-finder to disregard each and every affidavit of service, thus providing for a common resolution of the question. *See* Federal Jury Practice And Instructions, Civil, § 105.04 ("Impeachment—Inconsistent statement or conduct . . . If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves"). Similarly, because there is an indication of spoliation of crucial evidence of sewer service (process servers' logbooks, which are required to be maintained), Plaintiffs will seek an order at trial directing that uniform sewer service is deemed established for purposes of this action, and prohibiting Defendants from opposing Plaintiffs' claims concerning the filing of fraudulent affidavits of service, or other similar relief.

In addition, Judge Chin determined that any class member who was properly served still "[fell] victim to an allegedly false affidavit of merit." Op. at 31. As Plaintiffs' claims based on false affidavits of merit are completely independent from their claims based on false affidavits of service, Judge Chin acted well within his discretion in determining: (i) that the evidence regarding sewer

12

service was pervasive; and (ii) that the affidavits of merit were uniformly false.

There is nothing questionable about Judge Chin's factual findings or ruling.

### c.    Whether Debts Were Actually Owed is Irrelevant to this Litigation

Defendants attempt to manufacture individualized issues by claiming

that the validity of the underlying debts is relevant to whether Defendants are liable

under the FDCPA, RICO, and the state law claims.  Essentially, they argue that they

are permitted to commit perjury and fraud against people who allegedly owe them

money.  Unsurprisingly, Defendants cite no support for this distasteful proposition.

Judge Chin's holding to the contrary is hardly questionable.

Judge Chin rightly concluded that none of Plaintiffs' claims require

proof that the amounts sought in the state court actions were not owed.  The

pertinent issue is not whether a debt was owed, nor whether Defendants may, at

some point, be capable of ascertaining proof of the underlying debt.  It is whether, in

seeking to collect on alleged debts, Defendants made false representations about

what was known at the time the affidavits were submitted to courts.

Defendants' arguments would turn the FDCPA statutory scheme on its

head.  As the court in *Hamid v. Stock & Grimes, LLP,* explained:  "It is clear from

its underlying purpose that debtors may recover for violations of the FDCPA even if

they have defaulted on a debt.  It follows that debtors may recover the amount paid

to settle a debt, if the debt collector violated the FDCPA in making the collection, as

13

occurred here." 876 F. Supp. 2d 500, 503 (E.D. Pa. 2012). *Hamid* decried the perverse incentives that would flow from the damages limitation Defendants here propose: "If [plaintiff's] payment was not a proper element of actual damages under the FDCPA, a debt collector could harass a debtor in violation of the FDCPA, as a result of that harassment collect the debt, and thereafter retain what it collected." *Id.* "We do not believe that Congress intended" a debt collector to "retain what it collected" as a result of violating the FDCPA, *Hamid* concluded. *Id.; see also Abby v. Paige*, 10-23589-CIV, 2013 WL 141145, at *8-9 (S.D. Fla. Jan. 11, 2013) (holding that plaintiff is entitled to compensation for the moneys collected by defendants in violation of the FDCPA "[r]egardless of whether Plaintiff owed these amounts"); *Krawczyk v. Centurion Capital Corp.,* 06-C-6273, 2009 WL 395458, at *8 (N.D. Ill. Feb. 18, 2009) ("The FDCPA was enacted by Congress to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether there is a valid debt owed."). The same reasoning is equally applicable to claims under RICO, the N.Y. GBL, and the N.Y. JL.

Defendants' argument that the validity of the underlying debt is relevant to actual injury and causation under RICO misses the nature of the injury alleged in this case. Class members were harmed by Defendants' fraudulent

procurement of default judgments against them, regardless of the validity of the debt and whether or not they were actually served.[5]

       Defendants are correct that this federal class action is not the proper forum for adjudicating the validity of these underlying debts.  The proper forum is in state court, through the use of proper notice and lawful affidavits or other admissible evidence.  Defendants, however, chose to bypass the proper procedure and defraud tens of thousands of people for their own financial gain.  They cannot now, in response to a lawsuit, attempt to do on a wide scale what they neglected to do individually.  To the extent Defendants collected money as a result of violating federal and state law, such collections were illegal and must be remitted as damages.  Defendants can still pursue any outstanding debts from class members in state court—as long as they do so lawfully.

### d.    The Predominance Requirement Is Satisfied

      Defendants further argue that, even if commonality is satisfied, individual issues predominate over these common questions.  LUK Br. at 16-18; MSH Br. at 13-16; Samserv Br. at 18-19.  The predominance requirement under Rule 23 is satisfied "if resolution of some of the legal or factual questions that

---

[5]    Under New York law, a default judgment is not automatically granted, even when the defendant was properly served and intentionally failed to appear.  Rather, it requires the filing of an affidavit of merit in every case, regardless of the defendant's behavior or circumstances.  *See* CPLR 3215(f).  This procedural rule respects the fact that the plaintiff has the burden of proof and that every court judgment should be supported by valid evidence of a prima facie case. *See Beaton v. Transit Facility Corp.*, 14 A.D.3d 637, 789 N.Y.S.2d 314, 315 (App. Div. 2d Dep't 2005).

qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (internal quotation marks omitted)).  Together with the "superiority" requirement, the predominance requirement "ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 615 (1997)).

Citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013), Defendants argue that Judge Chin failed to address whether individualized damages issues would "inevitably overwhelm questions common to the class."  MSH Br. at 16; *see also* LUK Br. at 11.  As Defendants acknowledge, however, *Comcast* does not change the requirements under Rule 23 or prohibit certification where individualized damages exist.  *See* LUK Br. at 11 ("To be sure, Rule 23 does not require that *all* issues be common to the class").  Thus, Judge Chin's unremarkable finding that potential differences in damages among class members do not

predominate over common questions is a far cry from the "questionable" standard required under Rule 23(f).

*Comcast* does not change the well-settled law that differences in damage calculations among the plaintiff class do not preclude commonality, *see Trinidad v. Breakaway Courier Sys.,* No. 05 Civ. 4116 RWS, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007), or, for that matter, typicality, *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 128 (S.D.N.Y. 2011).  Moreover, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139.  "As long as a sufficient constellation of common issues binds class members together, [individual] variations . . . will not automatically foreclose class certification under Rule 23(b)(3)."  *Id*. at 138 (citation omitted); *see also Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("[I]t is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification.").

*Comcast* simply reiterates the long-standing rule that certification is not appropriate where individualized inquiries will "inevitably overwhelm questions common to the class." 133 S. Ct. at 1433.  In *Comcast*, the class was improperly certified because the plaintiffs had been unable to offer *any* measure of damages capable of class-wide application that captured only those damages flowing from the

17

single theory of antitrust liability accepted by the district court.  Because the district court considered only this one improper measure of damages, it granted class certification without considering whether, with an appropriate measure of damages, common questions would predominate.  *Id*. ("Without presenting another methodology, respondents cannot show Rule 23(b)(3) predominance").

That is not the case here.  Defendants mischaracterize Judge Chin's ruling when they suggest that he failed to consider whether the need for some individualized inquiries in fact predominates over common questions in this case.  LUK Br. at 18.  Specifically, Defendants argue that Judge Chin "punted" all damages issues to be addressed "later in the proceedings, if necessary."  MSH Br. at 16.  In fact, Judge Chin found that the predominance inquiry was satisfied *despite* any individualized damages issues in the case – that is, despite any unique incidental damages (*e.g.*, out-of-pocket losses expended by a plaintiff who attempted to get a default judgment vacated).  Indeed, Judge Chin explained that "the Court has a number of management tools available to address any individualized damages issues that might arise."  Op. at 38 (internal quotations and modifications omitted).

This makes perfect sense.  If Plaintiffs are entitled to compensation for the money Defendants extracted from them pursuant to the default judgments, such damages are easily capable of class-wide resolution.  The court would need only consult Defendants' records for the precise figures they obtained from each Plaintiff.

Similarly, statutory damages are capable of resolution on a class-wide basis.

Damages susceptible only to individualized calculations—such as unique, incidental

out-of-pocket losses—are ancillary and would not overwhelm the common

questions in this case.

Judge Chin's reference to determining damages "later in the

proceedings," cited by Defendants, was taken from his subsequent opinion

accompanying the class certification order, in response to Defendants' bizarre

request to cabin the available damages in the certification order's class definition.[6]

*See* LUK Br. Ex. B (attaching March 27, 2013 order).  Having already determined

that even individualized damages inquiries into unique incidental damages would

not overwhelm the common questions, Judge Chin rightly decided that specific

categories of damages that are readily subject to class wide resolution and

---

[6]     Defendants had asked Judge Chin to define the class so as to prohibit plaintiffs from seeking recovery of the amounts taken from them in enforcement of the judgments, arguing, *inter alia,* that such damages claims ran afoul of the *Rooker-Feldman* doctrine.  Judge Chin rightly refused this request, reasoning that the amount and kind of damages need not be articulated in a certification *order* and, in any event, rejecting Defendants' *Rooker-Feldman* argument.  The Leucadia Defendants improperly seek to re-inject the same issue at this stage, suggesting repeatedly that Plaintiffs seek to vacate the state court default judgments by seeking compensation for the money Defendants fraudulently extracted from them.  However, as Judge Chin has twice held, Plaintiffs' damages claims, which challenge Defendants' fraud in procuring the state court judgments but do not seek to overturn them, fall well outside the scope of the narrow *Rooker-Feldman* doctrine.  Defendants' contentions that Plaintiffs somehow did not assert their intent to seek these damages in the Complaint are simply baseless.  Leucadia also argues that the district court should have determined the available measures of damages when certifying the class, and cites *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 186 (3d Cir. 2006), in support.  LUK Brief at 18-19.  However, *Wachtel* does not reference damages; in that case, the certification order simply described the individuals who comprised the class and did not mention the claims, issues or defenses to be treated on a class basis, which Judge Chin clearly did here.

application could be calculated later and need not be included in the class

certification order.  Because the only potential individualized issues are limited and

easily resolvable, Judge Chin was correct in finding that common issues

predominate, and that class treatment is a superior way of managing Plaintiffs'

claims.[7]

### e.    Samserv Is a Proper Defendant

Judge Chin's decision not to limit the class to persons fraudulently

served by Samserv is unquestionably correct for two reasons:  First, such a

limitation would exclude persons who had common claims against all other

Defendants based on Defendant Fabacher's fraudulent affidavits of merit, which

would make the class under-inclusive.  Second, and more importantly, all the

Defendants, including the Samserv Defendants, are liable under RICO for all

injuries caused by the racketeering activity of the enterprise of which they are a part.

*See* 18 U.S.C. § 1962(c); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451,

---

[7]    The Leucadia Defendants also contend that the individualized inquiry of whether a class member's claim is time-barred threatens to predominate over common questions.  LUK Br. at 17-18.  Contrary to their suggestion, however, Plaintiffs do not seek to include as class members persons whose claims, without the benefit of equitable tolling, accrued outside the applicable statute of limitations.  For example, only individuals whose claims accrued within one year prior to the filing of the Complaint will seek relief under the FDCPA.

Finally, Samserv argues that it "has defenses the other defendants do not," specifically the defense that process servers are not debt collectors under the FDCPA.  Samserv Br. at 19-20.  To the extent this is a challenge to predominance, it fails.  First, "although 'a defense may arise and may affect different class members differently, [this occurrence] does not compel a finding that individual issues predominate over common ones." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (quoting *In re Visa Check*, 280 F.3d at 138).  Second, the viability of this defense under the FDCPA is common to all class members.

457 (2006); *Sedima, S. P. R. L. v. Imrex Co.*, 473 U.S. 479, 495-97 (1985) ("If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff . . . , the plaintiff has a claim under § 1964(c).").

### C.   Interlocutory Review Is Not Warranted Because Defendants' Purported "Novel Questions" Do Not Present a Compelling Need for Immediate Resolution

The Mel Harris Defendants contend that the Order raises questions about "unsettled areas of law" concerning FDCPA and RICO, and the Leucadia Defendants argue that interlocutory review is appropriate simply to determine whether injunctive relief is available under RICO. As a Class is appropriately certified *regardless* of the determination of these legal questions,[8] these ancillary legal questions do not warrant interlocutory review.

Under *Sumitomo*, this Court will grant leave to appeal pursuant to FRCP 23(f) if "the certification order implicates a legal question about which there is a compelling for immediate resolution." 262 F.3d at 139. Defendants have advanced several purported "novel questions," MSH Br. at 18, which they claim

---

[8]    Defendants wrongly argue that the district court erred by basing its commonality finding in part on unsettled questions of law. LUK Br. at 13, MH Br. at 18. Contrary to Defendants' contention, Rule 23(a) allows for certification based on "questions of law" (emphasis added) and requires only that such questions be "capable of classwide resolution" – in other words, that a classwide proceeding will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551. The common questions of law identified by Defendants – whether RICO provides injunctive relief to private parties and whether the FDCPA applies to false statements made to courts – handily meet this standard.

21

meet this standard.  However, even a novel legal question does not compel

immediate review unless it is (1) "of fundamental importance to the development of

the law of class actions" and (2) "likely to escape effective review after entry of

final judgment."  *Id.* at 140; *see also Weber v. United States Tr.,* 484 F.3d 154, 160

n.5 (2d Cir. 2007) (Rule 23(f) should not "serve a precedent-creation function").

Accordingly, if the so-called "novel questions" can be fully reviewed on appeal

from final judgment, that alone is basis to deny the 23(f) petition.  *Sumitomo*, 262

F.3d at 142.  Similarly, if resolution of the "novel question" would not affect the

district court's grant of class certification, because it would not affect class

certification of other claims, the Court will likewise deny review.  *Id.* at 143.

Because Defendants' proposed questions are not fundamental to the development of

class action law, can be reviewed on appeal from final judgment, and would not

affect the grant of class certification, they do not meet this standard.

In *Hevesi v. Citigroup*, this Court described a novel legal question that

met the *Sumitomo* standard.  366 F.3d 70, 77-81 (2d Cir. 2004).  There, the district

court certified a class against a research analyst and his employer, based on the

fraud-on-the-market doctrine, without first finding that the analyst's opinions

affected the market price of the securities.  *Id.* at 77.  The question whether the

fraud-on-the-market doctrine applied to statements made by analysts, as opposed to

issuers, was novel.  *Id.*  It was also central to class certification because the doctrine,

if applicable, would eliminate the need to prove individual reliance, thus allowing class certification to proceed. *Id.* at 78. And it was significant to the development of class action law because extending the doctrine to cover analysts would expose an entire new group of defendants (research analysts and their employers) to potential liability from securities class actions, of which there are many. *Id.* at 80. In addition, the issue was likely to escape review after entry of final judgment because this particular case, arising out of the WorldCom scandal, was "not the run-of-the-mill class action" but unique in terms of its vast scope and potential impact. *Id.* As the Court stated, "it is hard to conceive of many cases that are less likely than the instant case to yield an appealable final judgment." *Id*. at 81.

Defendants' proposed "novel questions" fall far short of the *Sumitomo-Hevesi* standard. First, Defendants argue that this Court should grant the 23(f) petition to review whether plaintiffs may seek injunctive relief under RICO. Plaintiffs concur that this question is undecided in the Second Circuit. This question, however, is hardly of "fundamental importance to the law of class actions," as it arises only very rarely, and even then, not necessarily in the class action context. Moreover, answering this question will not alter the class certification analysis one iota because Judge Chin also certified a (b)(2) class under the N.Y. GBL § 349, and there can be no doubt as to the propriety of an injunctive

class under that statute.[9]  *Weinberg v. Hertz Corporation*, 69 N.Y.2d 979 (1987)

(affirming certification of class action seeking injunctive relief under N.Y. GBL §

349).  Under *Sumitomo*, then, there is no "compelling need for immediate

resolution" of this question.  262 F.3d at 139, 143.

   Next, Defendants argue that this Court should grant review to decide

whether making false representations to a court, rather than to the debtor, violates

the FDCPA.  This question, however, is both irrelevant to the law of class actions

and likely to arise in the normal course on review of a final judgment.  *See*

*Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012) (addressing

question on review of grant of summary judgment); *O'Rourke v. Palisades*

*Acquisition XVI, LLC*, 635 F.3d 938 (7th Cir. 2011) (same); *Hartman v. Great*

*Seneca Fin. Corp.*, 569 F.3d 606 (6th Cir. 2009) (same).  Its resolution also does not

affect the propriety of class certification because Defendants do not (and cannot)

---

[9]  The Mel Harris Defendants cite *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002) to claim that false statements made in court filings, rather than directly to Plaintiffs, do not give rise to a GBL § 349 claim.  Defendants are wrong.  *See Midland Funding v. Giraldo*, No. CV-021859-12, 2013 N.Y. Misc. LEXIS 1083 (Dist. Ct. Nassau County Mar. 22, 2013) (holding that debt buyer can be held liable under GBL § 349 for false and misleading statements made in court papers).  To successfully assert a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *City of New York v. Smokes-Spirits.Com, Inc*., 12 N.Y.3d 616, 621 (2009).  There is no requirement that the materially misleading statement be made directly to the consumer.  *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) ("[A]s we have repeatedly stated, reliance is not an element of a section 349 claim.")

  In fact, *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002), does not even address the point Defendants misguidedly attempt to raise but rather stands for the proposition that § 349 does not extend to deception committed outside the State of New York.

claim that making false representations to a court, as opposed to a consumer, defeats a RICO or N.Y. GBL claim.  *Bridge v. Phoenix Bond & Indemnity Co*., 553 U.S. 639 (2008) (RICO); *supra* n.9 (N.Y. GBL).   Thus, there is no "compelling need" for this Court to decide this question now.

## CONCLUSION

The district court's certification Order presents "familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings."  1998 Advisory Committee Note to Fed. R. Civ. 23(f). Defendants' petitions should be denied.

Dated:      April 25, 2013
            New York, New York

                              EMERY CELLI BRINCKERHOFF
                               & ABADY LLP


                              ____/s_____
                              By:  Matthew D. Brinckerhoff
                              Jonathan S. Abady
                              Debra L. Greenberger
                              75 Rockefeller Plaza, 20th Floor
                              New York, New York 10019
                              212-763-5000

                              NEIGHBORHOOD ECONOMIC
                              DEVELOPMENT ADVOCACY
                              PROJECT (NEDAP)
                              Claudia Wilner
                              176 Grand Street, Suite 300
                              New York, NY 10013
                              212-680-5100

                              MFY LEGAL SERVICES, INC.
                              Carolyn E. Coffey
                              Of Counsel to Jeanette Zelhof
                              299 Broadway, 4th Floor
                              New York, New York 10007
                              212-417-3701

                              *Counsel for the Plaintiff Class*