# No. 13-1320(L)
## 13-1323(Con), 13-1324(Con)

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

SAMSERV, INC. ET AL.,

*Petitioners-Defendants,*

v.

SYKES, ET AL.,
individually and on behalf of all others similarly situated

*Respondents-Plaintiffs.*

On Petition for Permission to Appeal from the
United States District Court for the Southern District
of New York, No. 09 Civ. 8486

**MEL HARRIS DEFENDANTS' REPLY IN SUPPORT OF PETITION FOR LEAVE TO APPEAL CLASS CERTIFICATION ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)**

JAMES R. ASPERGER
MARIA GINZBURG
QUINN EMANUEL URQUHART
  & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

MARC A. BECKER
1 Fleet Place
London, EC4M 7RA
United Kingdom
+44 (0) 20 7653 2000

PAUL D. CLEMENT
CANDICE CHIU
BANCROFT PLLC
1919 M Street NW, Suite 470
Washington, DC 20036
(202) 234-0090
pclement@bancroftpllc.com

BRETT A. SCHER
KAUFMAN DOLOWICH VOLUCK
  & GONZO LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797
(516) 681-1100

*Counsel for Defendants Mel S. Harris and Associates, LLC,
Mel S. Harris, Michael Young, Kerry Lutz, Todd Fabacher, and David Waldman*

May 9, 2013

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ................................................................................................. 1

I.     THE ORDER BELOW IS NOT JUST QUESTIONABLE, BUT
CLEARLY ERRONEOUS. ........................................................................ 2

II.    THE ORDER WILL EFFECTIVELY TERMINATE THE
LITIGATION AND RAISE LEGAL QUESTIONS POSING A
COMPELLING NEED FOR IMMEDIATE RESOLUTION. ..................... 8

# TABLE OF AUTHORITIES

**Cases**

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005) .............................................................................9

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)....................................................................... 1, 6, 7, 10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    289 F.3d 98 (D.C. Cir. 2002)............................................................................9

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
    262 F.3d 134 (2d Cir. 2001) ..................................................................... 1, 8, 9

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)................................................................... 1, 3, 4, 6, 10

*Waste Management Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000)............................................................................9

**Statute**

28 U.S.C. § 2072 ....................................................................................................2

## INTRODUCTION

Plaintiffs' opposition only underscores the need for this Court's review. While plaintiffs embrace the district court's rewriting of their claims to focus on affidavits of merit that no named plaintiffs ever saw, they cannot escape the reality that class members have fundamentally different claims depending on whether they were actually served and whether they actually owed the underlying debts—and those are inherently individualized issues. Damages issues are also inherently individualized, especially now that plaintiffs' case has morphed into a full-blown effort to reclaim the tens of millions of dollars paid pursuant to the default judgments against every class member. The district court dismissed these inherently individualized issues through a cursory predominance analysis and by deferring any consideration of damages issues for another day. This "certify first, ask questions later" approach would have been problematic even before *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Afterwards, it is clear, reversible error.

The order below is thus not merely "questionable," but wrong. *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001). And because it will "effectively terminate the litigation" and raises unresolved "legal question[s] about which there is a compelling need for immediate resolution," it independently satisfies both standards for Rule 23(f) review. *Id.*

## I. THE ORDER BELOW IS NOT JUST QUESTIONABLE, BUT CLEARLY ERRONEOUS.

1. Plaintiffs' opposition wholeheartedly embraces the district court's fundamental rewriting of plaintiffs' own claims, despite the Rules Enabling Act's clear direction that procedural rules should not affect, let alone dictate, substance. The charge for a district court is to determine whether the claims actually pled can be adjudicated on a classwide basis, not to reformulate individualized claims to shoehorn them into the class-action device. *See* MSH Pet. 12; 28 U.S.C. § 2072.

Plaintiffs do not even address their earlier pleadings in which Samserv's purported sewer service was the crux of the alleged fraud and crucial to the alleged conspiracy—and in which the filing of affidavits of merit with the state court was but one act at the tail end of a broader course of conduct culminating in default judgments. *See* MSH Pet. 11-13. Plaintiffs thus engage in revisionist history by suggesting the affidavits of merit have always been "[t]he core of Plaintiffs' case." Opp'n 3. Plaintiffs had it right the first time: questions about whether members were in fact served or owed the debt fundamentally dictate what type of claim a member has and whether any resulting damages would be significant or nominal. Simply identifying a single common issue and labeling it "central" does not change the reality that those individualized issues are what will drive this litigation.

In any event, plaintiffs' abandonment of their original allegations clarifies that plaintiffs' case for class certification turns entirely on the district court's

2

theory that the affidavits of merit are "*the* central and common issue identical to each and every class member." Opp'n 2 (emphasis in original). Like the district court, plaintiffs assert that this one common thread both renders the class representatives' claims typical, Opp'n 11 n.4, and predominates over any individualized issues. In short, allegations of Samserv's sewer service were the crux of plaintiffs' actual claims. But affidavits of merit are now the crux of the commonality, typicality, and predominance findings and sole basis of certification. As shown in our petition and below, the supposedly common affidavits-of-merit issue cannot bear the weight placed on it by the court or plaintiffs. It is at most a common issue, not one that will drive the litigation, let alone predominate.

2. Plaintiffs make the classic mistake *Wal-Mart* sought to correct. They identify a theoretically "common" question that implicates all class members—whether the affidavits of merit overstated the affiant's knowledge—and essentially stop there. *See* Opp'n 8-10. Nowhere do they grapple with *Wal-Mart*'s admonition that mere recitation of common questions of law or fact "is not sufficient." 131 S. Ct. at 2551. "'What matters to class certification … is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.*

As our petition explained, whatever the common answers generated by the affidavits of merit, they do not meet the *Wal-Mart* standard. *See* MSH Pet. 7-11.

3

Although the affidavits of merit may have some connection to each class member, they are of fundamentally different import to different members. For those who were never served with process and were thus deprived of the ability to raise valid defenses to the claimed debts, the affidavits of merit are of only marginal relevance. The affidavits of merits could have been impeccable and those unserved individuals still would have suffered the same injury; their grievances lie with Samserv. (And any of their incidental damages, like travel costs incurred in lifting the default judgments, would not be caused by the affidavits of merit.) For members who were served or actually owed the debts, the affidavits of merit may have marginally more relevance, but such members also face greater problems establishing causation or anything more than nominal damages. But whether entirely ancillary to a potentially strong claim fundamentally about lack of service, or more relevant to a weak claim, the affidavits of merit neither "drive the resolution of the litigation" nor render the two types of claims "typical." Rather, it is whether plaintiffs were served or actually owed the debts that dictates the nature of a plaintiff's claim and goes to the heart of the theories of injury and causation.

3.  Plaintiffs' effort to downplay the individualized issues of service and debts only underscores the flaws in the district court's reasoning. Plaintiffs run away from the court's concession that service issues were individualized (but subordinate to the affidavits of merit). Instead, plaintiffs project the possibility of

4

two hypothetical *future* rulings by which service could be addressed on a classwide basis: A "fact-finder" could, based on "widespread" service disparities, "disregard each and every affidavit of service, thus providing for common resolution of the question." Opp'n 12. Or plaintiffs could use the spoliation of logbooks to "seek an order at trial directing that uniform sewer service is deemed established." Opp'n 12. But the fact that plaintiffs point to possible *future* rulings that could potentially make service a less individualized issue all but concedes that the *current* certification order is flawed. Moreover, neither of those expedients to address service classwide works. The premise of "widespread" sewer service is contradicted by the record, *see* MSH Pet. 1, and alleged spoliation by *process servers* would not justify an adverse inference against *Mel Harris*. But even if one of these theories provided a basis for disregarding affidavits of service, it would not obviate the need to determine whether individuals were, in fact, served. Not even plaintiffs assert that no one in the class was served, and establishing that some or even many class members were not served does not demonstrate which ones were not served. Indeed, disregarding affidavits of service would only make the service question that much more subject to difficult, individualized proof. There is no getting around the reality that service is central and inherently individualized.

The district court likewise conceded that debt issues were individualized, but deemed this irrelevant because "[l]iability under the FDCPA" could be established

5

regardless of whether debtors owe the debt.  Op. 31.  Plaintiffs suggest a conspicuous addition beyond what the court said—that such reasoning "equally appli[es] to the claims under RICO, the N.Y. GBL, and the N.Y. JL."  Opp'n 14.  That conclusory statement is unsupported by authority, and there is none, given the causation requirements.  And again plaintiffs' felt need to offer that addition speaks volumes.  The court granted certification over all of plaintiffs' claims.  That individualized issues about debts may not have been critical to one theory does not justify certification of the entire case.  And the FDCPA claims suffer problems of their own.  *Wal-Mart* requires a "'rigorous analysis'" before the momentous step of certification.  131 S. Ct. at 2551.  Picking and choosing aspects of some claims that are relatively amenable to certification, while ignoring that the overall class certified is an unwieldy amalgam of individualized claims, is not sufficient.

    4.  Plaintiffs also confirm that the district court's predominance analysis was far too cursory, especially in light of *Comcast*.  Plaintiffs do not deny that the court's predominance analysis depended on the unilluminating observation that individualized issues do not necessarily "*preclude* a finding of predominance."  Op. 37.  In fact, plaintiffs spend pages reiterating that principle and arguing that it survives *Comcast.*  Opp'n 16-18.  But just as individualized issues do not preclude a finding that common issues predominate, a common issue does not preclude a finding that individualized issues predominate.  What is required is the

6

identification of which issues are truly common in the *Wal-Mart* sense and which are individualized, and a meaningful assessment of what is tail and what is dog—precisely the analysis that the court short-circuited with its unhelpful observation.

Damages issues exemplify the court's failure to grapple with what fell on the individualized side of the ledger. As explained, the March 27 order saved damages issues for another day. MSH Pet. 16. Plaintiffs quibble with this characterization, claiming that the court "found that the predominance inquiry was satisfied *despite* any individualized damages issues in the case." Opp'n 18. But that is no better. Holding preemptively that common issues predominate (especially when only one arguably common issue was identified) irrespective of what damages issues might arise later (especially where damages turn on individualized issues like the validity of debt) was wrong even before *Comcast*. After, it is indefensible. *Comcast* involved an antitrust theory where most merits issues were common and still problems with proving classwide damages unraveled certification. Surely, refusal to even consider damages issues would have been reversible error, *a fortiori*.

As plaintiffs acknowledge, the court "refused" to resolve what "kind of damages" are involved. Opp'n 19 n.6. Plaintiffs attempt to take advantage of that vacuum by positing an entitlement to tens of millions in damages from default judgments. It is bad enough that defendants have been dealt a bait-and-switch by this eleventh-hour introduction of a potentially devastating new damages theory.

7

But it is even worse that the court blessed a (b)(3) class without even grappling with what damages calculations this litigation entails. And the approach of certifying before ascertaining how damages will be proven invites plaintiffs' post-certification strategic shift to a more generous (but more individualized) damages theory. To weigh common against individualized issues without understanding the very damages theories at issue is, in effect, to weigh something against nothing and render the demanding predominance standard a nullity.

**II.  THE ORDER WILL EFFECTIVELY TERMINATE THE LITIGATION AND RAISE LEGAL QUESTIONS POSING A COMPELLING NEED FOR IMMEDIATE RESOLUTION.**

1. This Court's immediate review is warranted because the certification order "is questionable," to say the least, and "will effectively terminate the litigation." *Sumitomo*, 262 F.3d at 138-39. Plaintiffs are blithely dismissive of the extent to which their sprawling class action—and the uncertainty spawned by their eleventh-hour threat to seek recovery of the tens of millions paid pursuant to default judgments—imposes settlement pressures on Mel Harris that could end the litigation. Citing a few out-of-circuit cases out of context, plaintiffs assert that no petitioner can show settlement pressures absent an "evidentiary showing" of financial distress. Opp'n 5. There is no such bright-line rule. *E.g.*, *Sumitomo,* 262 F.3d at 140 ("We accept, for the purposes of this case, petitioners' assertion that class certification will effectively terminate the litigation because it will force them

8

to settle the case rather than risk trial."). Even large companies must rationally decide whether to settle, and an erroneous certification order can make settlement the only rational course, in which case the error will not be reviewed on a post-trial appeal. And Rule 23(f) appellate findings would be an odd place to require evidentiary affidavits. To the extent the cited cases scrutinize some petitioners' claims of financial distress, they reveal a skepticism that corporate behemoths will fold in the face of a certification order. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 960 (9th Cir. 2005) (question is "whether Ford has sufficiently demonstrated 'that the damages claimed would force a *company of its size* to settle'"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98 (D.C. Cir. 2002) (same for Mylan); *see also Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294-95 (1st Cir. 2000) ("what might be 'ruinous' to a company of modest size might be merely unpleasant to a behemoth;" "WMH is a massive corporation"). Mel Harris is an eight-lawyer firm. The only behemoth here is the sprawling class with its multiple claims (including RICO), and potentially massive damages (including treble damages). The settlement pressure is undeniable.

2. Review is independently warranted because the order "implicates a legal question about which there is a compelling need for immediate resolution." Plaintiffs do not deny that a key question—whether making false representations to a court, not the debtor, violates the FDCPA—is unsettled. Nor do they deny its

import. Plaintiffs merely dispute the "compelling need" for review on grounds that the question "does not affect the propriety of class certification because Defendants do not (and cannot) claim that making false representations to a court, as opposed to a consumer, defeats a RICO or N.Y. GBL claim." Opp'n 24-25.

That is incorrect. Our petition noted that if making false representations solely to a court defeats an FDCPA claim, it should similarly defeat a GBL claim, given the laws' analogous text and purpose. MSH Pet. 19 n.6. And if plaintiffs were left only with a RICO claim, that would surely affect the propriety of class certification. As noted, the court minimized the individualized debt issues by emphasizing that the issue was not relevant to the FDCPA claims. If those claims fail for independent reasons, leaving only RICO claims for which the debt issue is critical to causation, the case for certification evaporates entirely.

And to the extent plaintiffs demand a question going directly to the propriety of certification, the order's incompatibility with *Wal-Mart* and *Comcast* more than suffices. Those cases demand a rigorous analysis, that common issues be ones that provide answers that drive the litigation, and that common issues predominate over individualized issues, including damages issues. The certification order simply cannot be squared with those principles. Certify-first, ask-and-answer-the-hard-questions-later is not an available approach in the wake of *Wal-Mart* and *Comcast*.

This Court should grant Mel Harris Defendants' petition for leave to appeal.

Respectfully submitted,

*s/ Paul D. Clement*

| | |
|---|---|
| JAMES R. ASPERGER | PAUL D. CLEMENT |
| MARIA GINZBURG | CANDICE CHIU |
| QUINN EMANUEL URQUHART | BANCROFT PLLC |
|   & SULLIVAN LLP | 1919 M Street NW, Suite 470 |
| 51 Madison Avenue, 22nd Floor | Washington, DC 20036 |
| New York, NY 10010 | (202) 234-0090 |
| (212) 849-7000 | pclement@bancroftpllc.com |
| MARC A. BECKER | BRETT A. SCHER |
| 1 Fleet Place | KAUFMAN DOLOWICH VOLUCK |
| London, EC4M 7RA |   & GONZO LLP |
| United Kingdom | 135 Crossways Park Drive, Suite 201 |
| +44 (0) 20 7653 2000 | Woodbury, NY 11797 |
| | (516) 681-1100 |

*Counsel for Defendants Mel S. Harris and Associates, LLC,*
*Mel S. Harris, Michael Young, Kerry Lutz, Todd Fabacher, and David Waldman*

May 9, 2013

11

# CERTIFICATE OF SERVICE

I hereby certify that, on May 9, 2013, an electronic copy of this Reply in Support of Petition for Leave to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) was filed with the Clerk of Court using the ECF system and thereby served upon the following counsel:

MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
DEBRA L. GREENBERGER
EMERY CELLI BRINCKERHOFF & ABADY, LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
212-763-5000
mbrinckerhoff@ecbalaw.com

I further certify that all parties required to be served have been served.

*s/ Candice Chiu*
CANDICE CHIU
BANCROFT PLLC
1919 M Street NW, Suite 470
Washington, DC 20036
(202) 234-0090
cchiu@bancroftpllc.com